*FOR PUBLICATION*

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

APPELLATE DIVISION

| | |
|---|---|
| C&C CONSTRUCTION AND MAINTENANCE, INC., | ) |
| | ) |
| | ) D.C. Civ. APP. NO. 2002/0093 |
| | ) Consolidated        2003/0023 |
| Appellant, Cross-Appellee, | ) Re: Sup.Ct.Civ.No. 849/1994 |
| | ) |
| v. | ) |
| | ) |
| JUAN NALES-MARTINEZ, | ) |
| | ) |
| Appellee, Cross-Appellant. | ) |
| | ) |

On Appeal from the Superior Court of the Virgin Islands
Superior Court Judge: Maria M. Cabret

Considered: December 19, 2008
Filed: July 15, 2011

BEFORE:    RAYMOND L. FINCH, Judge of the U.S. District Court of
the Virgin Islands; JUAN R. SANCHEZ, Judge of the U.S.
District Court, Eastern District of Pennsylvania,
sitting by designation; and BRENDA J. HOLLAR, Judge of
the Superior Court of the Virgin Islands, sitting by
designation.

ATTORNEYS:

Charles E. Engeman, Esq.
St. Thomas, U.S.V.I.
        Attorney for Appellant, Cross-Appellee,

Eszart A. Wynter, Esq.
St. Croix, U.S.V.I.
        Attorney for Appellee, Cross-Appellant.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. Nos. 2002-0093 & 2003-0023 Memorandum Opinion
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 2

Judge Raymond L. Finch delivers the majority opinion, joined by Judge Juan R. Sanchez, with Judge Brenda J. Hollar, concurring in part and dissenting in part.

In reviewing this civil action for damages, we are called upon to address assignments of error regarding the Superior Court's decisions concerning summary judgment pursuant to Federal Rule of Civil Procedure 56 and directed verdict, pursuant to Federal Rule of Civil Procedure 50.

## I. FACTUAL AND PROCEDURAL POSTURE

C&C Construction and Maintenance Inc. ("C&C" or "Appellant") was a construction and maintenance company which provided manpower and services for the HOVENSA, LLC oil refinery on St. Croix, U.S.V.I. Appellee, Juan Nales-Martinez ("Martinez" or "Appellee" or "Cross-Appellant") was formerly employed as a carpenter with C&C from 1991 until December 1993. In December of 1993, Martinez was laid off due to a reduction in workforce and given a lay-off slip indicating that he would be eligible for rehire should work become available. Martinez, however, was never rehired by C&C.

On October 24, 1995, after discovering that carpenters with less seniority had been rehired, Martinez initiated an action

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 3

for fraud, misrepresentation, breach of contract and wrongful

discharge in the Superior Court.[1] On September 25, 2001, the

trial court entered summary judgment against Martinez dismissing

his fraud, misrepresentation and wrongful discharge claims.

From April 22-23, 2002, a trial was held on the surviving

breach of contract claim.[2] At trial, Martinez argued through

counsel that an implied contract existed between himself and

C&C, which was based in part on seniority; and which imposed a

duty on C&C to rehire him should work become available.

Martinez further argued that C&C breached that duty by failing

to rehire him when work became available. C&C counter-argued,

---

[1] At all times relevant to the lower court's proceedings, the
trial court was known as the Territorial Court of the Virgin
Islands and its judges were referred to as Territorial Court
Judges. Effective January 1, 2005, however, the name of the
Territorial Court changed to Superior Court of the Virgin
Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004
V.I. Legis. 6687 (2004). Recognizing this renaming, where
applicable, the Court employs the terms "Superior Court" and
"judge of the Superior Court".

[2] On September 21, 2001, the court dismissed Martinez' claims for
fraud, misrepresentation and wrongful discharge. (J.A. 539-542.)
Martinez' appellate briefs do not challenge the trial court's
dismissal of his fraud and misrepresentation claims. We,
therefore, do not consider them now. *In re Pressman-Gutman Co.,
Inc.*, 459 F.3d 383, 402 (3d Cir. 2006)(failure by a party to
identify an issue in its opening brief constitutes waiver of
that issue on appeal).

C&C Construction and Maintenance Inc. v. Juan Nales-Martinez
D.C. Civ. App. No. 2002-0093
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 4

*inter alia*, that no written or implied contract existed, no seniority policy was adopted, nor did C&C otherwise have a duty to rehire Martinez.

After the close of Martinez' case-in-chief, C&C moved for judgment as a matter of law on the breach of contract and damages claims pursuant to Fed. R. Civ. P. 50(a). The trial court heard arguments on the motion from both parties, but reserved its ruling. After the close of all evidence, C&C renewed its Rule 50(a) motion. Again, the court reserved its ruling. While the Rule 50(a) motion remained pending, the jury was instructed and the matter was submitted for deliberation. Subsequently, the jury returned a verdict in favor of Martinez in the amount of $273,000.00 in compensatory damages.

After the jury was discharged, the trial court granted in part and denied in part, C&C's pre-verdict Rule 50(a) motion. In partially granting C&C's 50(a) motion with regard to damages, the trial court reasoned that Martinez "failed ... to present evidence which would allow a rational fact-finder to find any damages for the years 1994, 1995, 1996, 1997, 1998, 1999." (J.A. 450-451.) In partially denying C&C's 50(a) motion, the trial court concluded that there was sufficient evidence from which a

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 5

rational fact-finder could determine that there was a duty to

rehire based on custom and practice from October of 2000 until

June of 2001. (*Id.*) In so doing, the trial court calculated

Martinez' hourly salary based on a forty-hour work week from

October 2000 to June 2001, reduced by the amount Martinez earned

in 2001. (J.A. 450-451.) The result was a remittitur of the jury

award from $273,000.00 to $13,483.00 in damages. On July 10,

2002, the trial court issued its written ruling. However,

neither C&C nor Martinez filed any post-verdict motions with the

trial court, nor did either party move for a new trial.[1]

On July 16, 2002, C&C filed its timely notice of appeal

challenging the trial court's partial denial of its Rule 50(a)

motion for judgment as a matter of law. On July 26, 2002,

Martinez filed a timely cross-appeal challenging the trial

court's September 21, 2001, summary judgment decision and its

July 10, 2002, remittitur of the damages award.

---

[1] On March 18, 2011, upon this Court's order, C&C filed notice
that its reasonable inquiry had revealed that no post-verdict
motions were filed with the Superior Court. *See* Notice of filing
response to show cause order by C&C Construction & Maintenance
(D.V.I. App. Div. March 18, 2011), ECF No. 37.

*C&C Construction and Maintenance Inc. v. Juan Nales·Martinez*
D.C. Civ. App. No. 2002·0093
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 6

## II. JURISDICTION and STANDARD OF REVIEW

This Court exercises appellate jurisdiction over judgments

and orders of the Superior Court in civil cases. V.I. Code Ann.

tit. 4, § 33 (2001); Revised Organic Act of 1954 § 23A, 48

U.S.C. § 1613a.[2] This Court exercises plenary review over the

order denying summary judgment, and must "apply the same test

that the lower court should have utilized." *Texaco Antilles Ltd.*

*v. Creque*, 273 F. Supp. 2d 660, 662 (D.V.I. 2003).[3]

---

[2] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp.2003), *reprinted in* V.I. Code Ann. §§ 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2003) (preceding V.I. Code Ann. tit. 1).

[3] A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Texaco Antilles Ltd. v. Creque*, 273 F. Supp. 2d 660, 662 (D.V.I. 2003).

Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment. *Id.* The evidence and inferences drawn therefrom must be viewed in the light most favorable to the nonmovant. *Id.* "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.*

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 7

The appellate court's review of a Rule 50(a) directed verdict is also plenary. *Mosley v. Wilson*, 102 F.3d 85, 89 (3d Cir. 1996). A directed verdict or judgment as a matter of law is only appropriate where, viewing all reasonable inferences in the light most favorable to the non-moving party, there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a)(1); *Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 664-665 (3d Cir. 2001); *Caver v. City of Trenton*, 420 F.3d 243 (3d Cir. 2005). The legal foundation for the jury's verdict is reviewed *de novo* while the factual findings are reviewed to determine if there is a rational basis for the verdict in the evidence, drawing all favorable inferences to the prevailing party justifiably drawn from the evidence. *Steelwagon Mfg. Co. v. Tarmac Roofing Systems, Inc.*, 63 F.3d 1267, 1271 (3d Cir. 1995).

## III. ANALYSIS

### A.   C&C's Appeal

C&C's arguments turn on the trial court's partial denial of its Fed. R. Civ. P. 50, motion for judgment as a matter of law. Specifically, C&C argues that the trial court erred by: reserving ruling and partially denying C&C's Fed. R. Civ. P. 50

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 8

motion; finding that an implied contract existed as a matter of law; and determining that there was sufficient evidence pursuant to Fed. R. Civ. P. 50 to award damages to Martinez. We, however, find that the trial court properly reserved its ruling, and that C&C's failure to file the necessary post-verdict motions precludes our substantive review of C&C's appeal.

### 1.   Rule 50

"Federal Rule of Civil Procedure 50 establishes two stages during which a party may challenge the sufficiency of the evidence in a jury trial: prior to submission of the case to the jury and after the verdict and entry of judgment." *See, e.g.,* *Benta v. Bryan*, 2009 U.S. Dist. LEXIS 64598, at *7-8 (D.V.I. App. Div. July 22, 2009), *rev'd on other grounds by*, 2011 U.S. App. LEXIS 6664 (3d Cir. Mar. 31, 2011). *Prior* to the case going before the jury, a party may challenge the sufficiency of the evidence via Fed. R. Civ. P. 50(a).[4]

---

[4] At the time of Martinez' trial, Federal Rule of Civil Procedure 50(a) provided that:

> (a) Judgment as a Matter of Law.
>
> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002 0093
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 9

In contrast, Rule 50(b), allows a party to renew its sufficiency of the evidence challenge *after* the jury verdict and entry of judgment. Fed. R. Civ. P. 50(b) provides in pertinent part that:

(b)  Renewing Motion for Judgment After Trial;

Alternative Motion for New Trial.

If, the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. <u>The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment--and may alternatively request a new trial or join a motion for a new trial under Rule 59</u>. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

---

evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

USCA Federal Rule of Civil Procedure 50 (2002).

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 10

      (A) allow the judgment to stand,
      (B) order a new trial, or
      (C) direct entry of judgment as a matter of law. . . .

*Id.* (emphasis added).

To challenge the sufficiency of evidence, a 50(a) motion must be filed before submission of the case to the jury. *Unitherm*, 546 U.S. at 396. If the Rule 50(a) motion is not granted and the jury subsequently decides against the moving party, then pre-verdict 50(a) arguments may be renewed by filing a post-verdict 50(b) motion. *Id.; see also Benta*, 2009 U.S. Dist. LEXIS 64598. A party may also challenge the trial court's 50(a) ruling by moving for a new trial pursuant to Rule 59. *See* Fed. R. Civ. P. 50(b) (2002).

### 2. Reserving ruling on C&C's 50(a) motion

C&C argues that the trial court erred in submitting the matter to the jury, while a Rule 50(a) motion was pending. However, the Superior Court's decision to reserve its decision was properly within its discretion.

Rule 50(a) expressly provides that the trial court *may* resolve the 50(a) issue against the party; and *may* grant a motion for judgment as a matter of law against the party based on sufficiency of the evidence. *See* Fed. R. Civ. P 50(a) (2002)

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 11

(emphasis added). The rule further provides that, "*[i]f*, the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b) (2002) (emphasis added).[5]

Thus, "while a [trial] court is permitted to enter judgment as a matter of law when it concludes that the evidence is legally insufficient, it is not required to do so." *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401, 405 (2006). In fact, "[trial] courts are, if anything encouraged to submit the case to the jury, rather than granting [Rule 50(a)] motions." *Id.* As Wright and Miller explain:

> Even at the close of all the evidence it may be desirable to refrain from granting a motion for judgment

_____

[5] Often it appears to the court or to the moving party that a motion for judgment as a matter of law made at the close of the evidence should be reserved for a post-verdict decision. This is so because a jury verdict for the moving party moots the issue and because a pre-verdict ruling gambles that a reversal may result in a new trial that might have been avoided. For these reasons, the court may often wisely decline to rule on a motion for judgment as a matter of law made at the close of the evidence, and it is not inappropriate for the moving party to suggest such a postponement of the ruling until after the verdict has been rendered.

Fed. R. Civ. P. 50(b) advisory committee's note (emphasis added).

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 12

as a matter of law despite the fact that it would be possible for the [trial] court to do so. If judgment as a matter of law is granted and the appellate court holds that the evidence in fact was sufficient to go to the jury, an entire new trial must be had. If, on the other hand, the trial court submits the case to the jury, though it thinks the evidence insufficient, final determination of the case is expedited greatly. If the jury agrees with the court's appraisal of the evidence, and returns a verdict for the party who moved for judgment as a matter of law, the case is at an end. If the jury brings in a different verdict, the trial court can grant a renewed motion for judgment as a matter of law.

*Unitherm, Inc.*, 546 U.S. at 405-06 (2006) (citing 9A Federal Practice § 2533, at 319 (citations and footnote omitted)).[6]

Here, the trial court adroitly exercised its discretion to reserve ruling, submitted the matter to a jury, then ruled as a matter of law, pursuant to Rule 50(a) after the return of the verdict. Accordingly, the trial court's conduct was in accordance with the governing rule and accepted practice. *See, e.g., id.* at 406.

---

[6] The Supreme Court has also held that, under Rule 50 (b), if a party moves for a directed verdict at the close of the evidence and the trial judge elects to send the case to the jury, even if the trial court judge does not explicitly reserve ruling, the judge is "deemed" to have reserved decision on the motion. *Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 321 (1967) (citations omitted).

C&C Construction and Maintenance Inc. v. Juan Nales-Martinez
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 13

### 3.   C&C's failure to move pursuant to Fed. R. Civ. P. 50(b) or Rule 59.

C&C's appeal[7] is predicated on substantive challenges to the
trial court's Rule 50(a) determination concerning its motion for
judgment as a matter of law[1] concerning Martinez' breach of
contract claim. However, C&C's procedural failure to file a Rule
50(b) post-verdict renewed motion for judgment as a matter of law
precludes our substantive review of its claims of error.[8]

_____

[7]C&C argues that the trial court's partial denial of C&C's pre-
verdict Rule 50(a) motion was in error because, there was
insufficient evidence that an implied contract existed. C&C
contends that in the absence of an implied contract, no damages
should be awarded whatsoever. Martinez argues that the trial court
erred in partially granting Martinez' Rule 50(a) motion and
remitting the jury award.

[1]Prior to amendment, Rule 50(b) motions were referred to as
motions for "judgment notwithstanding the verdict". *See* Fed. R.
Civ. P. 50 advisory committee note (if a motion is denominated a
renewed motion for directed verdict, renewed motion for judgment
as a matter of law or motion for judgment notwithstanding the
verdict, the nomenclature is merely formal. Such a motion should
be treated as a motion for judgment as a matter of law in
accordance with Fed. Rule Civ. P. 50) As such, the terms "judgment
notwithstanding the verdict (j.n.o.v.)" "renewed motion for
directed verdict" and "renewed motion for judgment as a matter of
law are used interchangeably.

[8]Where a party fails to file a post-verdict motion under Rule
50(b) (judgment notwithstanding the verdict) "the appellate court
[is] without power to direct the [trial court] to enter judgment
contrary to the one it had permitted to stand." *Cone v. West*

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 14

At the close of Martinez' case in chief, C&C filed a Rule 50(a) motion and articulated that 50(a) motion prior to the jury verdict.  The court reserved its ruling on the 50(a) motion and the matter was submitted to the jury. The jury returned a verdict. C&C had ten days thereafter to file either a Rule 50(b) renewed motion for judgment as a matter of law or a Rule 59 motion for a new trial. *See* Fed. R. Civ. P. 50(b)(2002); *see also* Fed. R. Civ. P. 59(2002). C&C filed neither motion.  This error proved fatal.

The Supreme Court has flatly held that a rule 50(a) ruling cannot be appealed "unless that motion is renewed pursuant to Rule 50(b)." *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401, 404 (2006)(citations omitted). This position is neither new nor trivial. For over half a century, the Supreme Court has underscored that a renewed motion for judgment as a matter of law [Rule 50(b) motion] is imperative because it permits the trial court to exercise its discretion to choose between ordering a new trial and entering judgment. *Cone*, 330 U.S. 212, 216 (1947); *see also Johnson v. New York, N. H. & H. R. Co.*, 344 U.S. 48, 53 n.13 (1952) (the requirement of a timely application for judgment after

*Virginia Pulp & Paper Co.*, 330 U.S. 212, 218 (1947)(citations omitted).

*C&C Construction and Maintenance Inc. v. Juan Nales-Martínez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 15

verdict is not an "idle motion because it is. . . an essential

part of the rule, firmly grounded in principles of fairness.")

The high Court in *Cone* noted that,

> [d]etermination of whether a new trial should be
> granted or a judgment entered under Rule 50(b)
> calls for the judgment in the first instance of
> the judge who saw and heard the witnesses and has
> the feel of the case which no appellate printed
> transcript can impart. Exercise of this
> discretion presents to the trial judge an
> opportunity, after all his rulings have been made
> and all the evidence has been evaluated, to view
> the proceedings in a perspective peculiarly
> available to him alone. He is thus afforded "a
> last chance to correct his own errors without the
> delay, expense or other hardships of an appeal.

*Id.*[9] The exercise of this discretion is so critical to the

reviewing process that the high Court has explicitly held

that, the absence of a post-verdict 50(b) motion before the

---

[9]In a series of pre-1967 cases, including *Johnson*, *Cone* and
*Unitherm*, the Supreme Court gave a great deal of deference to
trial court decisions concerning motions for new trials and for
directed verdicts. *Weisgram v. Marley Co.*, 528 U.S. 440, 449
(2000). However, in *Neely*, the Court reviewed its prior
jurisprudence and departed from the ironclad rule which gave
overwhelming deference to the trial court's discretion. *See Neely
v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 322 (1967). However,
the Court's departure from stiff deference to the trial court did
not alleviate litigants from the necessity of filing proper post-
verdict renewed requests for judgment as a matter of law. *See
Neely*, 386 U.S. at 327 (Court may directed entry of judgment for a
verdict loser whose proper request for judgment n. o. v. had been
wrongly denied by the [trial] court).

C&C Construction and Maintenance Inc. v. Juan Nales-Martinez
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 16

trial court precludes further appellate review. *Id.; see also*
*Unitherm*, 546 U.S. at 404.

Where, as here, the trial court reserves ruling on a
50(a) motion, then denies it after a verdict is returned, the
requirement does not change -- party must also raise a post-
verdict motion to trigger appellate review. *See, e.g.,*
*Johnson v. New York, N. H. & H. R. Co.*, 344 U.S. 48, 50-54
(1952). In sum, courts of appeals may review only the denial
of a 50(a) motion for judgment as matter of law made at the
close of all evidence and seasonably renewed post-verdict,
pursuant to Rule 50(b). *Surprenant v. Rivas*, 424 F.3d 5, 13
(1st Cir. 2005) (citing *Cone*, 330 U.S. at 218); *see also* Fed.
R. Civ. P. 50(b).[10]

---

[10]The Third Circuit Court of Appeals has followed the Supreme
Court's guidance concerning this issue. *See Charles Jacquin Et
Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 475 (3d
Cir. 1990) ("Where a party has failed to move for j.n.o.v., we will
not review the sufficiency of the evidence and direct a verdict
for them..."); *Woods v. National Life and Accident Ins. Co.*, 347
F.2d 760, 769 (3d Cir. 1965) ("A party's failure to file a motion
for judgment n.o.v. in the trial court precludes an examination of
the record by that court or this court for the purpose of
ascertaining whether that party was entitled to a directed
verdict."); *Anderson v. Haas*, 341 F.2d 497, 502 (3d Cir. 1965) ("We
are restrained from considering the entry of judgment for the
defendants because counsel failed to renew the motion for a

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 17

C&C moved for a directed verdict under Rule 50(a). However, C&C forfeited its right to substantive review when it failed to move, <u>after the jury rendered its verdict</u>, for judgment as a matter of law under Fed. R. Civ. P. 50(b) or to move for a new trial under Fed. R. Civ. P. 59. *See Unitherm Food Sys.*, 546 U.S. at 405, 408; *Gleason v. Norwest Mortg., Inc.*, 253 Fed. Appx. 198, 202 (3d Cir. 2007)("For a party to challenge on appeal the sufficiency of the evidence to support a jury's finding, that party must have first made an appropriate post-verdict motion under Federal Rule of Civil Procedure 50(b)"); *Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 475 (3d Cir. 1990)(similar); *Muniz v. Rovira*, 373 F.3d 1, 5 n.2 (1st Cir. 2004) ("Failure to file a motion for judgment as a matter of law at the close of all the evidence pretermits the filing of a post-trial motion for that relief."). Accordingly, because C&C failed to properly renew its motion for judgment as a matter of law or move for a new trial, we are barred from substantively reviewing the trial court's Rule 50(a) determinations for sufficiency of the evidence.

---

directed verdict by a motion for judgment *non obstante veredicto* as required under Rule 50.").

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 18

### B.   Martinez' appeal

Martinez' appeal is premised on two bases. First, Martinez challenges the Superior Court's remittitur of the jury's damages award on his breach of contract claim. Second, Martinez contends that the lower court's summary judgment decision concerning his wrongful discharge claim was made in error. We shall address each in turn.

### 1. Remittitur

After determining that the evidence was insufficient to support the jury's monetary breach of contract award in Martinez' favor, the trial court judge remitted the award from $273,000.00 to $13,483.00.[11] On appeal, Martinez frames his argument as a substantive challenge to the trial court's insufficiency of evidence determination. However, in our opinion, Martinez' appeal turns on a standard procedural safeguard that was not applied below or raised by either party; specifically, that the trial court erred in remitting the jury award without first offering

---

[11] After a verdict was rendered and the jury was discharged, the trial court remitted the jury's $273,000.00 damages award to $13,483.00 because, it reasoned that there was insufficient evidence to sustain the jury's monetary findings.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 19

Martinez the option of choosing between a remittitur and a new

trial.

A remittitur is the action taken by a court to reduce a

jury's verdict, and is triggered when the trial judge finds *inter*

*alia* that a jury's monetary damage award is unsupported by the

evidence or is excessive.[12] *Spence v. Bd. of Educ. of the Christina*

*Sch. Dist.*, 806 F.2d 1198, 1200 (3d Cir. 1986); *Kazan v. Wolinski*,

721 F.2d 911 (3rd Cir. 1983); *see also Mulkerin v. Somerset Tire*

*Service, Inc.*, 110 N.J. Super. 173, 176 (App. Div. 1970).[13]

---

[12] Before ordering a remittitur, the court must determine: (1) whether the award was supported by the evidence; (2) whether the jury award was excessive; and, if excessive; (3) whether the amount of the award was so unreasonable as to "shock the conscience." *Spence v. Board of Education*, 806 F.2d 1198 (3rd Cir. 1986). We may reverse and grant a new trial "only if the verdict is 'so grossly excessive as to shock the judicial conscience.'" *Edynak v. Atlantic Shipping, Inc.*, 562 F.2d 215, 225-26 (3d Cir. 1977)(quoting *Russell v. Monongahela Ry.*, 262 F.2d 349, 352 (3d Cir. 1958)).

[13] Because the trial judge is in the best position to evaluate the evidence and assess whether the jury's verdict is rationally based, the use of the remittitur falls within the discretion of the trial judge whose decision cannot be disturbed by a reviewing court absent a manifest abuse of discretion. *Gumbs*, 823 F.2d at 768-772; *Spence v. Bd. of Educ. of the Christina Sch. Dist.*, 806 F.2d 1198, 1200 (3d Cir. 1986); *Murray v. Fairbanks Morse*, 610 F.2d 149 (3rd Cir. 1979); *Edynak v. Atlantic Shipping, Inc. CIE. Chambon*, 562 F.2d 215 (3rd Cir. 1997); *Henry v. Hess Oil Virgin Islands Corp.*, 1995 U.S. Dist. LEXIS 12668 (D.V.I. 1995).

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 20

The trial court may order a remittitur when it believes the jury's award is *unreasonable* on the facts. *Id.* (emphasis in original). Hence, the remittitur is essentially "a substitution of the court's judgment for that of the jury regarding the appropriate award of damages." *Cortez v. Trans Union, LLC*, 2010 U.S. App. LEXIS 16772, at *64-65 (3d Cir. Aug. 13, 2010)(citing *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320 (11th Cir. 1999)). Because a remittitur requires a trial judge to substitute a jury's judgment for her own, a remittitur invariably raises concerns regarding a litigant's Seventh Amendment right to have his case decided by a jury in its entirety.

To avoid triggering Seventh Amendment concerns, the remittitur is traditionally accompanied by offering the verdict-winner **the choice** of a new trial. *See, e.g., Spence*, 806 F.2d at 1206; *see also Keller v. County of Bucks*, 209 Fed. Appx. 201, 203 (3d Cir. 2006); *see also Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1093 (3d Cir. 1995); *see, e.g., Herman v. Hess Oil Virgin Islands Corp.*, 1974 U.S. Dist. LEXIS 6135 (D.V.I. 1974). Choice is the lynchpin that allows the remittitur to withstand Seventh Amendment scrutiny on appeal; because, the coupling of the remittitur with the election of a new trial "gives [the] plaintiff

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 21

the choice of accepting the reduced verdict and foregoing his

right to have his damages heard by a jury[,] or suffering a new

trial on damages." *Mulkerin v. Somerset Tire Serv., Inc.*, 264 A.2d

748 (App.Div.1970)(emphasis added).[14]

    Put another way, in order to avoid Constitutional infirmity,

when remitting a jury award, "the court must offer a new trial as

an alternative to a reduction in the award in order to avoid

depriving the plaintiff of his/her Seventh Amendment right to a

jury trial." *Cortez*, 2010 U.S. App. LEXIS 16772, at *66 (emphasis

added); *see also Hetzel v. Prince William Cnty.*, 523 U.S. 208,

211, 118 (1998). Martinez was not presented the option of either

agreeing to the remittitur or pursuing a new trial.

    In *Hetzel v. Prince William County, Va.*, a jury in the

Eastern District of Virginia found for Hetzel on her civil rights

claims against Prince William County, Virginia. 523 U.S. at 208.

---

[14] This practice is buttressed against "a line of decisions
stretching back to 1889 [that] has firmly established that a
plaintiff cannot appeal the propriety of a remittitur order to
which he has agreed." *Donovan v. Penn Shipping Co.*, 429 U.S. 648,
649 (1977)(emphasis added) citing *Kennon v. Gilmer*, 131 U.S. 22,
29-30 (1889); *Lewis v. Wilson*, 151 U.S. 551, 554-555 (1894);
*Koenigsberger v. Richmond Silver Mining Co.*, 158 U.S. 41, 52
(1895); *Woodworth v. Chesbrough*, 244 U.S. 79, 82 (1917); *see also
Spence*, 806 F.2d 1206 (internal citations omitted)("The gravity of
accepting the remittitur . . . is highlighted by the fact that a
plaintiff may not appeal the propriety of a remittitur to which
s/he had agreed...")).

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 22

The trial court reduced the damages award from $750,000 to
$500,000 on the grounds that one of the claims supporting the
award was legally insufficient. *Id.* at 208-209.  The County
appealed, and the Fourth Circuit affirmed the finding of
liability, but reversed the reduced damages award as grossly
excessive and remanded for recalculation. *Id.* On remand, the
district court recalculated the damages and further reduced
Hetzel's award to $50,000. *Id.* Hetzel moved for a new trial, and
rejected the $50,000 award. *Id.*  On further appeal, the United
States Supreme Court highlighted that the court's remittitur
without the standard election for a new trial violated Hetzel's
Seventh Amendment right to a trial by jury. *Id.* The high court
pointedly explained that, when the trial court determines that the
evidence does not support the jury's award, it "has no authority .
. . to enter an absolute judgment for any other sum than that
assessed by the jury . . . . without allowing petitioner the
option of a new trial." *Id.* (internal citations and quotations
omitted).[15]

_____

[15] Where a remittitur is employed, the absence of this option cannot
be squared with the Seventh Amendment's prohibition on the
reexamination of facts determined by a jury. *Hetzel*, 523 U.S. at
211.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 23

     *Hetzel* highlights the time-honored practice of the
conditional remittitur as a tool designed to give the plaintiff <u>a</u>
<u>choice</u> between a reduced award or a new trial where, "the
prerequisites to recovery have been firmly established, but the
trial judge has determined that the damage award is 'just too
much.'" *Spence v. Board of Education*, 806 F.2d 1198, 1206 (3d Cir.
1986)(emphasis added)(citing *Schneffer*, 506 F. Supp. at 1308); *see
also Davis v. Omitowoju*, 883 F.2d 1155, 1163 (3d Cir. 1989). That
choice was not presented here.

     Here, the trial remitted a significant portion of the jury's
award for legal insufficiency. However, it did not give Martinez
the option of either accepting the reduced verdict or pursuing a
new trial on damages. The trial court's failure to offer Martinez
the option of a new trial on damages triggered Seventh Amendment
concerns that we are compelled to safeguard. Hence, we remand to
afford the Appellant the opportunity to exercise the option that
should have been presented to him in the first instance.[16]

---

[16] In contrast to the dissent's position, we limit the scope of our
remand to solely allow Martinez the option of either electing to
accept the remittitur or seeking a new trial. Because the task of
properly calculating damages is best left for the finder of fact
below, we are of the opinion that this Court should not engage in
the fact-finding inquiry that occasions calculating Martinez'
damages. This is particularly true where the governing standard of

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 24

Accordingly, we narrowly remand the trial court's remittitur with

instructions for the trial court to solely allow Martinez the

option of either: a) accepting the trial court's reduced damages

award or b) moving for a new trial on damages.

### 2. Summary Judgment

Martinez also argues that the trial court erred in rendering

summary judgment against him on his wrongful discharge claim. On

September 25, 2001, prior to trial, the Superior Court entered

summary judgment against Martinez concerning his statutory wrongful

discharge claim.[17] The court held that, under V.I. Code Ann. tit. 24,

---

review guides us to defer to the trial court's remittitur
determination, absent a "manifest abuse of discretion". *See
Murray*, 610 F.2d at 153 (citing *Edynak*, 562 F.2d 215) ("the
question of the excessiveness of a verdict is primarily a matter
to be addressed to the sound discretion of the [trial] judge, and
we may not disturb this determination unless a "manifest abuse of
discretion" be shown.")); *see also Edynak*, 562 F.2d at 226-27("The
trial judge is in the best position to evaluate the evidence and
assess whether the jury's verdict is rationally based.").

[17]Martinez challenges the trial court's summary judgment
determination in his opening brief. We may review the trial
court's September 25, 2001 pre-trial summary judgment ruling
because an appeal from a final judgment, generally, draws in
question all prior non-final orders and rulings, where the
challenger raises those rulings in is opening brief. *See
Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 858 (3d Cir.
1990); *see also Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir.
1999); *Murray v. Commercial Union Ins. Co*, 782 F2d 432, 434 (3d
Cir 1986) (when an appellant gives notice in his opening brief
that he is appealing from a final order, we may review earlier

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 25

§ 76(a)("Wrongful Discharge Act" or "Act"), a termination resulting

from a workforce reduction is not a *per se* wrongful discharge and,

thus, summary judgment was appropriate.[18] *See* V.I. Code Ann. tit. 24,

§ 76; (J.A. 539-542).

> In pertinent part, 24 V.I.C. § 76(c) reads:

> [N]othing in this section shall be construed as
> prohibiting an employer from terminating an employee as
> a result of cessation of business or as a result of a
> general cutback in work force due to economic hardship.
> . .

*Id.*

As the trial court aptly held, in the absence of an agreement

to the contrary, an employer has no statutory duty to rehire

employees who are laid off due to a *bona fide* work-force

---

orders disposing of other claims); *see also Williams v Guzzardi*,
875 F2d 46, 49 (3d Cir. 1989)(appellate jurisdiction vests over
orders not specified in the notice of appeal if there is a
connection between the specified and unspecified order, the
intention to appeal the unspecified order is apparent, the
opposing party is not prejudiced and has a full opportunity to
brief the issues).

[18] The Wrongful Discharge Act does not require exhaustion of
administrative remedies or election between administrative and
judicial remedies. *Hess Oil V.I. Corp. v. Richardson*, 894 F. Supp.
211, 213 (D.V.I. 1995). Accordingly, an employee who has initiated
an administrative claim for wrongful discharge is not barred from
filing simultaneously or subsequently a WDA action in court. *Id.*

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 26

reduction.[19] *See* 24 V.I.C. § 76. Martinez does not contest the fact that C&C's workforce reduction was indeed *bona fide*. Moreover, in the absence of a statutory duty to rehire, Martinez presents no contract to support his conclusion that C&C had a duty to rehire him. As such, no genuine issue of material fact exists as to whether C&C had an obligation to rehire Martinez. We accordingly, affirm the trial court's summary judgment decision concerning wrongful discharge.

## V. CONCLUSION

For the reasons cited above, we affirm the Superior Court's ruling concerning Martinez' wrongful discharge claim. C&C's challenge to the trial court's Rule 50(a) ruling concerning Martinez' breach of contract ruling fails because C&C failed to file the requisite post-verdict motions. We otherwise remand for the trial court to offer Martinez the election of either accepting the remittitur or moving for a new trial on damages concerning his breach of contract claim. An order consistent with this opinion shall follow.

---

[19] The Superior Court did, however, allow Martinez to test his wrongful discharge claim on the theory that C&C had an implied contractual duty to rehire him. Martinez argued the surviving implied breach of contract claim at trial.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 27

## HOLLAR, J., *concurring in part and dissenting in part*:

I concur with the majority's ruling that the Superior Court's September 25, 2001 Order granting summary judgment, in part, in favor of Appellant, C&C Construction and Maintenance Inc., ("C&C" or "Appellant" or "Cross-Appellee"), is reviewable. I further concur with the majority's ultimate decision, on the merits, to affirm the trial court's partial summary judgment dismissing all counts of Appellee, Juan Nales-Martinez's ("Martinez" or "Appellee" or "Cross-Appellant") complaint except for the breach of contract (implied contract) cause of action. I also concede that if the evidence was insufficient to support the jury's verdict, the trial court could order a remittitur but only on the condition that an option is given to either accept the remittitur or be awarded a new trial. Regrettably, however, I am constrained to depart company with my esteemed colleagues' determination that there was insufficient evidence to support the jury's verdict.

## I.   FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Martinez sued C&C on four (4) causes of action, to wit: fraud, misrepresentation, wrongful discharge and breach of contract (implied contract). C&C filed a motion for summary judgment and despite opposition by Martinez, the trial court

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002 0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 28

granted C&C's motion for summary judgment, in part, on the fraud,

misrepresentation and wrongful discharge claims, but left the

breach of contract (implied contract) cause of action intact.   A

trial by jury went forward on the single cause of action.   At the

conclusion of Martinez's case-in-chief, C&C moved for judgment as

a matter of law pursuant to Federal Rules of Civil Procedure

50(a).[2]

The trial court reserved ruling on the motion.   Martinez had

no good faith reason to raise and did <u>not</u> make a motion for

judgment as a matter of law with respect to any of C&C's defenses.

After all the evidence was introduced, C&C renewed its Rule 50(a)

motion.   Again, Martinez did <u>not</u> raise a Rule 50(a) motion for

judgment as a matter of law on any defense(s) alleged by C&C at

the conclusion of all the evidence.

The case was thereafter submitted to the jury.   Following

deliberations, a verdict was returned on behalf of Martinez in the

amount of $273,000.00. (Joint Appendix at 450.)   Upon discharging

the jury, the trial court, without any delay, *sua sponte* denied

C&C's reserved Rule 50(a) motion on the <u>issue of liability</u>.   This

---

[2]   50(a) of the Federal Rules of Civil Procedure was formerly
referred to as "Directed Verdict" and 50(b) of the Federal Rules
of Civil Procedure was previously referred to as "Judgment N.O.V.
or Judgment Notwithstanding the Verdict."

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 29

swift and immediate ruling by the trial court effectively stripped

C&C of any opportunity to independently renew his Rule 50(a)

motion pursuant to Rule 50(b).  The trial court then reduced the

jury's verdict to $13,483.00 without giving Martinez an option for

a new trial by calculating as follows:  $16.40/hour (carpenter pay

rate) x 40 hours/week = $656.00 per/week; $656.00 per/week x 4

weeks = $2,624.00/month; $2,624.00/month x 8 months (from October

2000 to June 2001) = $20,992.00. (Joint Appendix at 451.)  Because

Martinez testified that he earned $11,264.00 outside his

employment with C&C in 2001, the court then divided Martinez's

outside earnings by 12 months ($11,264.00 ÷ 12 months = $938.00).[3]

This amount ($938.00) was then multiplied by 8 months which

totaled $7,509.00.[4]  The court then reduced $20,992.00 by $7,509.00

to arrive at its reduced damages award of **$13,483.00** in favor of

Martinez.

## II.  ANALYSIS

This dissent is more fully expanded and elaborated in the

argument that follows:

---

[3]  The actual dollar amount is $938.67, however, it is obvious that
the trial court chose to utilize a round figure ($938.00). (Joint
Appendix at 452.)
[4]  Again, the actual dollar amount of $938.67 (not $938.00) x 8
months yields $7,509.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 30

REVERSAL OF THE TRIAL COURT'S REDUCED JUDGMENT AND REINSTATEMENT OF THE JURY'S VERDICT IS WARRANTED BECAUSE A RATIONAL JURY COULD HAVE RETURNED A VERDICT OF $273,000.00 BY A PREPONDERANCE OF THE EVIDENCE AND THERE WAS NO RULING FOR A NEW TRIAL IN LIEU OF THE REMITTITUR.

During Martinez's case-in-chief, evidence of his employment with and subsequent "lay off" from C&C was presented. Martinez presented evidence from former employees, who testified that they understood the practice and/or "policy" of C&C was to rehire laid-off employees. Martinez also testified that he in fact knew of and accepted this policy. To add insult to injury, Martinez stated that C&C did not articulate a basis to lay him off although the job to which he was assigned was incomplete.[5]

On the issue of damages, evidence was admitted as to the rate of pay for C&C carpenters during the years Martinez was unemployed. Additionally, Martinez testified as to his earnings while unemployed. During C&C's case-in-chief, C&C refuted any existence of a rehiring policy and contended that the company lays off workers due to a "reduction in the workforce." (Joint Appendix at 374.) However, C&C failed to present any evidence showing that

---

[5] During trial, Mr. Gustave James, former general manager for C&C, testified that persons are hired to work on a job and are laid off when the job is done. (Joint Appendix at 354.) However, when Martinez was laid off he was working on a job that was not complete. (Joint Appendix at 355.)

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 31

it did not rehire carpenters up until the company ceased to exist
in 2001.  Instead, at trial, witnesses for C&C continually played
the "blame game" wherein each conveniently testified as having
insufficient knowledge of C&C's new employees or that another
division was best suited to account for the company's "new
hirees."

    This alleged lack of knowledge arguably made certain
witnesses for C&C appear less credible and this became more
evident at various junctures during trial when certain C&C
administrative personnel, both former and current, were questioned
regarding alleged hiring of individuals during Martinez's
unemployment.  For example, Ms. Raquel Ruach, C&C's former
controller, testified that her job description required her to
"take care of all financial records for [C&C]."  (Joint Appendix
at 308.)  Ms. Ruach also testified that she was "in charge of the
payroll department, the accounts receivable, accounts payable and
budgets."  Notwithstanding Ms. Ruach's duties at C&C, she
testified as having insufficient knowledge regarding alleged C&C
employees or "new hirees" because, as C&C's controller, she merely
"made sure [an employee's] pay rate [was] the correct pay rate."
(Joint Appendix at 308; 339.)  Consider the following colloquy:

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 32

MS. RAQUEL RUACH—C&C CONTROLLER:

Q:   Are you familiar with the name <u>John St. Louis</u>?
A:   No, sir, I am not.

Q:   Are you familiar with the name of an employee <u>Augustin St. Rose</u>?
A:   The name is familiar.

Q:   Do you know when he started working for C&C Construction Company?
A:   No recollection.

Q:   Are you familiar with the name, <u>Addison Demming</u>?
A:   Again, I do have recollection of that name.

Q:   And is that a person who worked for C&C Construction Company?
A:   The name is familiar. He could have possibly worked.

Q:   Do you know when he started working for C&C Construction Company?
A:   No recollection

Q:   Are you familiar with <u>Simon Montoute</u>?
A:   Name is familiar.

Q:   Do you know if he worked as a carpenter for C&C Construction Company?
A:   Again, I don't know the trade of these people, sir.

Q:   Do you know if he was hired, rehired on March 16, 2000?
A:   Would not know that sir.

Q:   Do you know the name <u>Andreas Velasques</u>?
A:   I have no recollection of the name.

Q:   Do you know an employee by the name of <u>Stanford Xavier</u>?
A:   No recollection of the name.

Q:   Do you know an employee by the name of <u>Derek Alicia</u>?

A:   No recollection of that name.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 33

    **Q:**   Do you know an employee by the name of <u>Pascal Benjamin</u>?

    **A:**   Name sounds familiar.

    **Q:**   Do you know an employee by the name of <u>Nicholas Edwin</u>?

    **A:**   Name sounds familiar.

    **Q:**   Do you know an employee by the name of <u>George Henry</u>?

    **A:**   I have no recollection of that name.

    **Q:**   Do you know an employee by the name of <u>Tracy James</u>?

    **A:**   Again, I have no recollection of these names.

    **Q:**   Do you know an employee by the name of <u>Ferdinand Maynard</u>?

    **A:**   Name sounds familiar.

    **Q:**   Do you know an employee by the name of <u>Fred Tavernier</u>?

    **A:**   No recollection of that name.

(Joint Appendix at 334-337.)

According to Ms. Ruach, C&C's division of personnel as opposed to its controller processed new employees. (Joint Appendix at 337.)  Ms. Ruach further testified that C&C's Human Resources was responsible for processing new carpenters before her office verified the file for entry in C&C's records. (Joint Appendix at 338.)  Ms. Ruach neglected however, to present verified C&C records for carpenters that were either hired and/or otherwise employed by C&C.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 34

Mr. Gustave James, C&C's former general manager, was also called as a witness during trial. Mr. James testified that Mr. Wilfredo Delerme, C&C's personnel manager, "was responsible for hiring and layoffs." (Joint Appendix at 366.) Mr. James further stated that although he was Mr. Delerme's supervisor, Mr. Delerme was the individual with "discretion to hire and rehire." (Joint Appendix at 366.)

After all the evidence and the parties rested, the trial court gave the jury its final instructions. (Joint Appendix at 406-409.) The jury was instructed as to the phrase "preponderance of the evidence" being the standard of proof in civil cases and instructed the jury as follows:

> To establish by a preponderance of the evidence means to prove that something is more likely than not so. In other words, a preponderance of the evidence means such evidence as when considered and compared with that opposed to it has more convincing force and produces in your minds a belief that what is sought to be proved is more likely to be true than not true … [t]his rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

(Joint Appendix at 406-407.)

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 35

The trial court further instructed the jury that Martinez must also prove his amount of damages by the preponderance of the evidence. Jurors were subsequently provided a special verdict form directing them, *inter alia*, to enter "the **total** amount of money, if any, which [he/she] find[s] will fairly and reasonably compensate [Martinez] for [C&C's] breach of contract." (Joint Appendix at 407; 448.)

Although C&C's apparent defense was that it did not hire carpenters while Martinez was laid off, it failed to present any evidence supporting this contention or dispelling the reasonable inference circumstantially, that it (C&C) did so hire. According to the "adverse inference rule":

> If a party fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and it did not.

3 Kevin O'Malley, Jay E. Grenig & Hon. William C. Lee, Federal Jury Practice and Instructions [Civil] 150 § 104.26 (5th ed. 2000). Under this "adverse inference rule," when a party has relevant evidence within its control that the party fails to produce, that failure gives rise to an inference that the evidence

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 36

is unfavorable to it. *Int'l Union (UAW) v. NLRB*, 459 F.2d 1329,

1336 (D.C. Cir. 1972); *Rockingham Machine-Lunex Co. v. NLRB*, 665

F.2d 303, 304 (8th Cir. 1981); *see also Interstate Circuit, Inc.*

*v. United States*, 306 U.S. 208, 226, 59 S.Ct. 467, 474, 83 L.Ed.

610 (1939) (production of weak evidence when strong is available

can lead only to conclusion that strong evidence would have been

adverse).  However, the rule that an unfavorable inference shall

be drawn against a party that fails to introduce evidence known to

be in its control does <u>not</u> apply where the party has good reason

to believe that its opponent has failed to meet its burden of

proof. *NLRB v. Chester Valley, Inc.*, 652 F.2d 263, 271 (2d Cir.

1981).

Here, Martinez met his burden of proof, even though the

parties failed to request an instruction under Section 104.26.

The trial court did however instruct the jury as to "reasonable

inferences."  Specifically, the trial court instructed the jury as

follows:

> In their arguments, the lawyers will ask you
> to infer, on the basis of your reason,
> experience, and common sense, from one or more
> established facts, the existence of some other
> fact.  The process of drawing inferences from
> facts in evidence is not a matter of guesswork
> or speculation.  An inference is a deduction
> or conclusion which you are permitted to draw,

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 37

but you are not required to draw, from the
facts which have been established by either
direct or circumstantial evidence.

In other words, when you consider the
evidence, you are not limited solely to . . .
[w]hat you saw and heard as the witnesses
testified. You are permitted to draw from
facts which you find have been proved such
reasonable inferences you feel are justified
in the light of your experience and common
sense.

Let me give you a simple example. You
are sitting in this courtroom, and you cannot
see outside. Assume that when you came in
this morning, it was a beautiful, sunny, day.
Assume, also, that someone just walked in the
door with an umbrella that was wet and a
raincoat that was dripping. You could, from
such circumstantial evidence, infer that it
was now raining outside. You are to consider
both kinds of evidence, direct and
circumstantial. The law also makes no
distinction between direct and circumstantial
evidence."

(Joint Appendix at 402-03.)

Because the trial court instructed the jury on reasonable

inferences, it was possible for the jurors to make a reasonable

inference and/or a reasonable adverse inference, that C&C's

failure to produce evidence that was in their exclusive control,

showing that it did <u>not</u> hire carpenters while Martinez was laid

off meant that carpenters were in fact hired during Martinez's

unemployment. The trial court ostensibly accepted the jury's

adverse reasonable inferences when it ruled on C&C's Rule 50(a)

C&C Construction and Maintenance Inc. v. Juan Nales-Martinez
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 38

motion via Rule 50 (b) and found C&C liable for breach of an implied contract and also found damages but not to the extent of the verdict award.  The trial court's finding could not have been made if C&C did not hire carpenters after Martinez was laid off. Moreover, damages can only be assessed after a finding of liability.  Therefore, the jury's reasonable adverse inferences, in arriving at its verdict, must also be accepted and applied on the issue of liability and damages.

More importantly, there was direct evidence adduced at trial that while Martinez was unemployed, C&C hired an individual named Juan Ignatius Isidore to work at its facility as a carpenter.  For all the reasons stated, a rational juror could therefore form, from direct and circumstantial evidence, a negative inference by the preponderance of the evidence that C&C in fact rehired carpenters during Martinez's unemployment.

It is also important to note that C&C did argue, and the trial court agreed, that loss of income claims require corroboration and that Martinez's "self-serving" statements, standing alone, could not support his claim for damages based on

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 39

loss of income.[6] (Joint Appendix at 351-53.) See also *Connelly v.*
*Chardon*, Civ. No. 78-53 (D.V.I. 1978); *Santana v. Mack*, 32 V.I.
378 (D.V.I. 1995); *Williams v. Martin Marietta Alumina, Inc.*, 817
F.2d 1030 (3d Cir. 1987). However, at the end of all the
evidence, the jury *was* [emphasis added] permitted to consider the
rate of pay for carpenters during the years 1994 through 2001 and
as such this evidence corroborated Martinez's testimony regarding
his loss of income for those years.

　　Because the jury was able to consider the progressive
increase in the rate of pay for carpenters during 1994 through
2001 together with Martinez's testimony regarding his earnings
while unemployed, a negative inference could be formed that C&C in
fact rehired carpenters during Martinez's unemployment and a
rational fact-finder, when taking all these factors together,
could have projected Martinez's damages from the time he was laid
off as follows:

---

[6]  C&C made this argument after Martinez's tax returns were used to
merely refresh his recollection as to his earnings for the years
1994-2001 while being laid off from C&C.  The tax returns however,
were <u>not</u> entered into evidence.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 40

| Year | Pay/Hr. | Base Salary | Gross Salary | Amt. of O/T | % of O/T Over Base Salary |
|---|---|---|---|---|---|
| 1993[7] actual | $11.50 | $22,080.00 | $32,228.00 | $10,148.00 | 46% |
| 1994-1995[8] projected | ------- | ------- | ------- | ------- | ------- |
| 1995-1996[9] projected | $14.05 | $26,976.00 | $39,384.96 | $12,408.96 | 46% |
| 1996-1997[10] projected | $14.50 | $27,840.00 | $40,646.40 | $12,806.40 | 46% |
| 1997-1998[11] projected | $14.95 | $28,704.00 | $41,907.84 | $13,203.84 | 46% |
| 1998-1999[12] projected | $15.45 | $29,664.00 | $43,309.44 | $13,645.44 | 46% |
| 1999-2000[13] Projected | $15.95 | $30,624.00 | $44,711.04 | $14,087.04 | 46% |

---

[7]  Martinez's actual earnings from C&C during the year 1993.
[8]  During trial, Martinez testified that he did not recall the exact amount earned during this period.  However, Martinez indicated that he received and/or earned $3,000.00 for twenty-six (26) weeks of unemployment in the year 1994.
[9]  Martinez's projected earnings based on hourly pay rate for carpenters in the year 1995 plus overtime pay.
[10]  Martinez's projected earnings based on hourly pay rate for carpenters in the year 1995 plus overtime pay.
[11]  Martinez's projected earnings based on hourly pay rate for carpenters in the year 1997 plus overtime pay.
[12]  Martinez's projected earnings based on hourly pay rate for carpenters in the year 1998 plus overtime pay.
[13]  Martinez's projected earnings based on hourly pay rate for carpenters in the year 1999 plus overtime pay.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 41

| 2000-2001[14] 8 months projected | $16.40 | $20,992.00 | $30,648.32 | $9,656.32 | 46% |
|---|---|---|---|---|---|
| **TOTAL** | | $186,880.00 | $272,836.00 | $85,956.00 | |

| Year | [15]Earnings Outside C&C |
|---|---|
| 1994 | $ 3,000.00+ |
| 1995 | $ 5,400.00 |
| 1996 | $ 6,800.00 |
| 1997 | $ 9,964.00 |
| 1998 | $ 5,101.00 |
| 1999 | $ 8,200.00 |
| 2000 | $ 9,415.00 |
| 2001 | $11,264.00 |
| Total | $56,144.00 |

**The calculations set forth in the chart hereinabove do not account for interest owed on money due at 9% per annum pursuant to V.I. Code Ann. tit. 11 § 951(1) or that overtime could have exceeded 46% of the base salary.**

## III. CONCLUSION

Given the foregoing, the trial court erred when it utilized

Rule 50(b) to reduce the jury's verdict from $273,000.00 to

---

[14]  Martinez's projected earnings based on hourly pay rate for carpenters for the period of October 2000 through June 2001 (8 months) plus overtime pay.
[15]  Represents Martinez's actual earnings while being laid off from C&C.

*C&C Construction and Maintenance Inc. v. Juan Nales-Martinez*
D.C. Civ. App. No. 2002-0093 and 2003-0023
Finch, R., delivers the majority opinion
Hollar, J., concurring in part and dissenting in part
Page 42

$13,483.00 when there was sufficient evidence from which a

rational jury could have returned a verdict for Martinez in the

amount of $273,000.00.